In re Estate of Charles Dorrance, deceased. Appeal of
the Pennsylvania Company for Insurance on Lives
and Granting Annuities, Trustee.

*Trusts and trustees—Compensation of trustees—Coal lease.*

Where the royalties from coal leases amount to about $2,000 per month,
the only duties of a testamentary trustee are to collect the royalties and at
once to distribute them, a commission of not more than one per cent on
collections will be allowed to the trustee; especially if it appears that
such is the customary compensation for such services in the mining region
where the coal included in the trust estate is situated.

Argued April 12, 1898. Appeal, No. 347, Jan. T., 1897, by
the Pennsylvania Company for Insurance on Lives and Grant-
ing Annuities, from decree of O. C. Luzerne Co., No. 49 of
1892, sustaining exceptions to account. Before STERRETT, C. J.,
GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to trustee's account.

Appellant, as trustee under the will of Charles Dorrance,
deceased, collected $117,955.24, and distributed it during a

period of five years, to the beneficiaries named in the will. In the account filed, it charged three per cent for its services.

The facts appear by the opinion of the court below, sustaining the exceptions, which was as follows.

Benjamin F. Dorrance, a beneficiary under will of decedent, excepts as follows : The charge of three per cent for commission is excessive. It should not have exceeded one half of one per cent.

Charles Dorrance, also a beneficiary, files the following exception : That the charge of three per cent for commission is excessive to the extent of at least two per cent, the sums being large, and the duties consisting of receiving and paying out the fund.

Although filed by different parties, the exceptions are to the same account and raise the same questions, so we will dispose of them together.

Col. Charles Dorrance died testate                        , 1892, leaving five children, viz: Annie B. Reynolds, Benjamin F. Dorrance, John Dorrance, J. Ford Dorrance, Charles Dorrance, Jr., and a granddaughter, Stella Dorrance, daughter of John Dorrance—all named as beneficiaries under his will. Decedent had made two coal leases—one to the Consumers Coal Company and the other now held by the Lehigh Valley Coal Company—and by his will he directed that accountant should pay the royalties therefrom in fifths to his children, except that one fifth of the share of John Dorrance should be paid to said Stella Dorrance.

The only duty the accountant has in connection with these leases is to receive the royalties from a trustee and distribute as above set forth. There is a trustee named in the leases who collects from the lessees and turns the funds over to the accountant. The collections run from April 21, 1892, to March 9, 1897, and aggregate $117,955.24. The payments and distributions were generally made monthly, and averaged nearly $2,000 per month. There was no agreement made as to charges. This fund is corpus of the trust, but under the will it is ordered to be distributed at once, and when that is done, the trust is ended so far as that fund is concerned, and compensation is due for services. The accountant claims three per cent upon the receipts, and we are referred to several cases in sup-

port of the charge—Stevenson's Estate, 4 Wharton, 104; Pusey v. Clemson, 9 S. & R. 204; Walker's Estate, 9 S. & R. 223; Whelen's Appeal, 70 Pa. 410—but none similar to the case at bar; all final settlements of estates. In Stevenson's Estate, in which the court says that for the receipt and disbursement of money two and one half per cent should be the uniform measure, and in which a total of three per cent was allowed, there was a will with twelve codicils, and in will and codicils reference to one hundred and two items. The legatees were scattered in five states and five foreign countries. Some of the claims due the estate were in foreign countries, and it appears that for two years one of the executors devoted one third of his time to the affairs of the estate. The total amount was $356,075.93. In Pusey v. Clemson, an estate of $100,000, three per cent allowed; $37,000 was collected by suits. Not less than fifteen suits were brought or defended by the executors. They attended to the interests of the estate in several states. They were allowed three per cent, which the court referred to as "quite sufficient." In Walker's Estate, $37,000, in which three per cent was allowed. executors, they were to clothe and look after a number of children; to expend a sum of money in charity, in clothing for poor children; to pay a number of small annuities for the life of the annuitants. In Wheelen's Appeal, an estate of $168,000, three per cent allowed. The estate was in litigation nearly six years, and important questions were decided.

In above case in which two and one half per cent is spoken of as the proper percentage for receiving and disbursing funds, it cannot be that the court meant the simple clerical work of receiving the money and paying it out, but must have meant compensation for the labor and attention requisite in the settlement of an ordinary estate, and allowed the extra one half per cent for the more than usual trouble met with in them. In Stevenson's Estate the court speaks of an allowance for special services as distinguished from those usually rendered. The fact that no contract was made in the case at bar simply leaves the question of compensation where it belongs. There can be no arbitrary rule. Each case stands by itself.

A large amount of expert testimony has been taken by the exceptants; none by the accountant. Mr. Abram Nesbitt, pres-

ident of the Second National Bank, says he has settled several large estates, and the usual charge has been three per cent; is trustee in several coal leases in which no agreement was made as to compensation; in them his charge for collecting and disbursing has been one per cent; thinks there would be no difficulty in getting it done for that, and that one per cent is sufficient in this case. Further says: "If I were an executor of an estate in which there was $100,000 cash assets in bank, I should charge one per cent." David P. Ayars, cashier of Miners' Savings Bank, says: "We receive coal rents and distribute them. . . . If there were nothing more to be done than to draw a few checks the rate is about one per cent in the absence of any agreement, although we have made other agreements for a less rate." A. A. Sterling, cashier and trust officer of the People's Bank of Wilkes-Barre, says: "We have been in such business as this about twenty years"—speaking of the work done by accountants—"I think we would be glad to do it for one per cent."

Under the evidence we think one per cent is a fair compensation for the services rendered by accountant; besides it must be noted that collections are being made and business generally done on a much smaller percentage than was possible fifty years ago.

We sustain the exception as to two thirds of the charge, and allow one per cent upon the amount collected, viz: $1,179.55. With a surcharge of $2,359.10 we will confirm the account.

*Errors assigned* were in sustaining exceptions to the account.

*John G. Johnson*, with him *Joseph D. Coons*, for appellant.— There was no evidence that the services rendered were less than those usually performed by trustees receiving and distributing rents.

The trustee assumed the responsibility of the proper receipt and disbursement of the income.

The allowance to trustees for collecting and disbursing income is never less than three, and is usually five, per cent: Stevenson's App., 4 Wharton, 104; Pusey v. Clemson, 9 S. & R. 204; O'Donnell's Est., 5 W. N. C. 534; Heckert's App., 24 Pa. 482; Hemphill's App., 18 Pa. 304; Bosler's Est., 161 Pa.

457; Pedrick's Est., 5 Phila. 478; Shivers's Est., 12 W. N. C. 462; Duval's App., 38 Pa. 119; Montgomery's App., 86 Pa. 230; Eshleman's App., 74 Pa. 42.

*A. Farnham* and *D. L. Rhone,*, for appellees, cited McCauseland's App., 38 Pa. 466; Lukens's App., 47 Pa. 356; Bosler's Est., 161 Pa. 457; Harland's App., 5 Rawle, 323; Eshleman's App., 74 Pa. 42.

PER CURIAM, May 9, 1898:

In ordinary cases, involving the care, custody, management, collection of rents, etc., of income-producing property, the compensation allowed the trustee in this case would be wholly inadequate; but what is reasonable compensation depends largely on the circumstances of each case. In view of the special circumstances of this case, as shown by the evidence, we are not convinced that the court below erred in reducing appellant's claim for commissions to the sum allowed.

Decree affirmed and appeal dismissed at appellant's costs.